UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEPHANIE S.,

                Plaintiff,

    v.                                                                            3:20-CV-1557
                                                                                       (DJS)

KILOLO KIJAKAZI, *Acting*
*Commissioner of Social Security*,

                Defendant.
_____

**APPEARANCES:**                                                        **OF COUNSEL:**

STEPHANIE S.
Plaintiff, *Pro Se*
Norwich, New York 13815

U.S. SOCIAL SECURITY ADMIN.                          HUGH DUN RAPPAPORT, ESQ.
OFFICE OF REG'L GEN. COUNSEL
Attorney for Defendant
J.F.K. Federal Building - Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**DANIEL J. STEWART**
**United States Magistrate Judge**

### MEMORANDUM-DECISION AND ORDER[1]

    Plaintiff *pro se*, Stephanie S., brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 5 & General Order 18.

not disabled. Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 20 & 26. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is granted and Defendant's Motion is denied.

## I. RELEVANT BACKGROUND

### A.  Background

Plaintiff was born in 1973. Dkt. No. 16, Admin. Tr. ("Tr."), p. 207. Plaintiff reported completing high school. Tr. at p. 212. She has past work experience in the construction and hospitality industries. *Id.* Plaintiff alleges disability based upon a splinter above her left buttock that resulted in an infected leg and four surgeries. Tr. at p. 211. Plaintiff applied for disability insurance benefits in September 2017. Tr. at pp. 11 & 168-169. She alleged a disability onset date of April 24, 2015. Tr. at p. 207. Plaintiff's application was initially denied on April 12, 2018. Tr. at pp. 89-97. Plaintiff sought reconsideration, Tr. at p. 98, which was denied. Tr. at pp. 99-106. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at p. 107. Plaintiff appeared at a hearing before ALJ Randall Frye on January 14, 2020. Tr. at pp. 28-64. On April 13, 2020, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 11-22. On October 21, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-4.

## B. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2019 and that she had not engaged in substantial gainful activity during the period between her alleged onset date and her date last insured. Tr. at p. 13. Second, the ALJ found that Plaintiff had the following severe impairment: complex regional pain syndrome associated with history of wood splinter in left upper leg with infection and surgery. *Id.* Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at p. 14. Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") "to perform light work (lift and carry 20 pounds occasionally and 10 pounds frequently, as defined in 20 C.F.R. 404.1567(b)), except she can sit/stand one time briefly each hour, and she should not perform any climbing or work around heights or dangerous equipment." *Id.* Fifth, the ALJ found that Plaintiff could not perform her past relevant work. Tr. at p. 20. Sixth, the ALJ found that based upon Plaintiff's age, education, and functional abilities there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, specifically work as a marker, router, or photocopier. Tr. at p. 21. The ALJ, therefore, concluded that Plaintiff is not disabled. *Id.*

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial

gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### C. Plaintiff's *Pro Se* Status

Given that Plaintiff is proceeding *pro se* the Court is mindful of its obligation to "engage in a searching inquiry when deciding whether substantial evidence supports an administrative fact finding, whether or not a *pro se* litigant is perceptive enough to identify a specific evidentiary deficiency." *Smith v. Comm'r of Soc. Sec.*, 2014 WL 3392336, at *4 (N.D.N.Y. July 10, 2014) (citing *Monette v. Astrue*, 269 F. App'x 109, 110 (2d Cir. 2008)). In doing so, the Court has held Plaintiff's "pleadings to less stringent standards than formal pleadings drafted by lawyers" and has construed them "to raise the strongest arguments that they suggest." *Rose v. Comm'r of Soc. Sec.*, 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016) (internal quotations and citations omitted).

## III. ANALYSIS

### A. The Five Step Sequential Analysis

Since Plaintiff has not identified potential errors in the ALJ's analysis, the Court has examined the record at each step of the sequential analysis for error.

"At step one of the sequential analysis, the ALJ must consider a plaintiff's work activity during the period of alleged disability." *Parks v. Comm'r of Soc. Sec.*, 2016 WL 590227, at *4 (N.D.N.Y. Feb. 11, 2016) (citing C.F.R. § 404.1520(a)(i)). "If the claimant is currently engaged in substantial gainful employment, she will be found not disabled." *Ewing v. Astrue*, 2013 WL 1213129, at *4 (N.D.N.Y. Mar. 22, 2013). Here, the ALJ found that Plaintiff had not engaged in substantial gainful employment since the alleged onset date of her disability. Tr. at p. 13. The record supports this conclusion. Tr. at p. 192 (earnings record reflecting no income in years 2016-2019).

"At step two of the sequential analysis, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment.'" *Pepper v. Comm'r of Soc. Sec.*, 2015 WL 3795879, at *2 (N.D.N.Y. June 17, 2015) (quoting 20 C.F.R. § 404.1520(a)(4)(ii)). A condition will be found not severe when it does not significantly impact or limit the individual's ability to do basic work. *Id.* Prior to her hearing before the ALJ, Plaintiff identified a splinter near her left buttock and history of surgeries on her infected leg as her disabling medical conditions. Tr. at p. 211. The ALJ found Plaintiff to have a severe impairment as it related to the splinter and subsequent surgeries. Tr. at p. 13.

The ALJ's findings at these first two steps were clearly favorable to Plaintiff and no basis for remand.

"Step three requires a determination as to 'whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.'" *Rivas v. Barnhart*, 2005 WL 183139, at *19 (S.D.N.Y. Jan. 27, 2005) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Here, the ALJ considered whether Plaintiff's condition met Listing 1.08 and concluded that it did not. Tr. at p. 14. Upon review, the ALJ's conclusion in this regard is supported by substantial evidence.

Listing section 1.08 requires:

Soft tissue injury (e.g., burns) of an upper or lower extremity, trunk, or face and head, under continuing surgical management, as defined in 1.00M, directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset.

20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.08. "Listing 1.00(M) defines 'continuing surgical management' as 'surgical procedures and any other associated treatments related to the efforts directed toward the salvage or restoration of functional use of the affected part.'" *Murray v. Comm'r of Soc. Sec.*, 2014 WL 4199725, at *12 (E.D.N.Y. Aug. 21, 2014) (quoting 20 C.F.R. Part 404, Subpart P, App. 1, § 1.00(M)). The ALJ reasoned that Plaintiff did not demonstrate that she was disabled under this Listing

8

because her surgeries "were not procedures directed toward salvage or restoration of major function of the claimant's lower extremity and moreover, she retained function of her lower extremity." Tr. at p. 14. There is no basis for concluding that the ALJ erred in his analysis.

As of November 2015, Plaintiff's surgeon reported that her surgical wounds were "well healed" and "she appears to be doing very well and I do not identify any particular, complicating features or concerns." Tr. at p. 409. Her doctor indicated she could return to work at "full duty" after completing physical therapy. *Id.* This was roughly seven months after her initial injury. *See* Tr. at p. 33 (noting injury occurred in April 2015). Thus, while Plaintiff concededly underwent several surgeries, the record does not demonstrate that she experienced continued surgical intervention without improvement over a twelve-month period. As such, she cannot show she met the requirements of Listing 1.08. *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 351 (S.D.N.Y. 2020); *Murray v. Comm'r of Soc. Sec.*, 2014 WL 4199725, at *14.

Prior to moving to step four, the ALJ must determine the Plaintiff's residual functional capacity. 20 C.F.R. § 404.1520(e); *Hall v. Colvin*, 2016 WL 6989806, at *10 (N.D.N.Y. Nov. 29, 2016). "In assessing a claimant's RFC, an ALJ must consider all of the relevant medical and other evidence, including a claimant's subjective complaints of pain." *Mills v. Astrue*, 2012 WL 6681685, at *3 (N.D.N.Y. Dec. 21, 2012) (internal quotations and citations omitted); *see also Knapp v. Apfel*, 11 F. Supp. 2d 235, 238 (N.D.N.Y. 1998) ("The RFC is determined by considering all relevant evidence"). The

9

question for the Court is whether the RFC is supported by substantial evidence. *Mills v. Astrue*, 2012 WL 6681685, at *3. This Court has consistently required that an ALJ "explain the weight given to the various opinions on which he relies, and generally ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Christeenia C. v. Saul*, 2021 WL 2644104, at *4 (N.D.N.Y. June 28, 2021). An ALJ must build an accurate and logical bridge between the evidence and her conclusion to enable the Court to undertake a meaningful review. *Pamela P. v. Saul*, 2020 WL 2561106, at *4 (N.D.N.Y. May 20, 2020). Here, the record is lacking in this regard and remand is required.

The ALJ found Plaintiff had the RFC to "perform light work (lift and carry 20 pounds occasionally and 10 pounds frequently, as defined in 20 CFR 404.1567(b)), except she can sit/stand one time briefly each hour, and she should not perform any climbing or work around heights or dangerous equipment." Tr. at p. 14. Exactly how the ALJ reached this conclusion is unclear. The ALJ purported to rely on statements in the medical records of Drs. Cardwell, Bhasin, and Stanley which the ALJ found "were consistent with one another and were very persuasive as well." Tr. at p. 20. Upon closer examination, however, these statements do not provide a clear explanation for the RFC finding here.

As discussed above, in November 2015, Dr. Bhasin stated that Plaintiff's surgical wounds were "well healed" and that she could return to work at "full duty" upon

completing physical therapy. Tr. at p. 409.[2] Just a month earlier, Dr. Stanley noted that Plaintiff's pain was "markedly improved." Tr. at p. 397. Dr. Stanley further noted that Plaintiff could engage in activity as tolerated and was being discharged from Dr. Stanley's care. *Id.* While the ALJ referred to "opinions" from Drs. Bhasin and Stanley, neither of the statements relied upon by him actually qualify as opinions under the applicable regulations. "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1513(a)(2). Put another way, "[a] medical opinion discusses the plaintiff's ability to perform physical demands of work activities; mental demands of work activities; other demands of work; and adapt to environmental conditions." *Michael H. v. Saul*, 2021 WL 2358257, at *5 (N.D.N.Y. June 9, 2021). The information gleaned from the medical notes of two providers clearly does not meet those standards. The ALJ's basis for relying on those statements in the record as medical opinions is, therefore, unclear.

The ALJ's consideration of Dr. Cardwell's records is also problematic. The record also lacks a specific medical opinion, as defined above, from Dr. Cardwell on which the ALJ could rely. Several other factors give the Court pause about the ALJ's consideration of evidence related to Dr. Cardwell's care of Plaintiff. First, the ALJ

---

[2] The opinion was clearly contingent. Tr. at p. 409 (indicating Plaintiff could return to work "once her physical therapy is complete."). The ALJ failed to address that contingency in discussing Dr. Bhasin's opinion and the record is unclear about the timing of any therapy after this statement. Evaluation of contingent opinions, however, requires express consideration of whether the stated contingency has been satisfied. *See Campbell v. Berryhill*, 2019 WL 691781, at *6 (S.D. Ala. Feb. 19, 2019).

appears to have relied heavily on a notation in Dr. Cardwell's records that as of August 2018, Plaintiff had returned to working in the construction industry. *See* Tr. at pp. 20 & 644. It is unclear why the ALJ credited that statement despite Plaintiff's express denial of the claim during her administrative hearing. Tr. at p. 34 ("I did not work after the injury."). The ALJ's acceptance of that fact also raises questions about his finding that Plaintiff had not engaged in substantial gainful activity during the relevant period ending in 2019. *See* Tr. at p. 13.

Second, the ALJ appears to have taken very different views of two letters from Dr. Cardwell in 2019 without providing an adequate basis for doing so. The ALJ credits the statements in a June 2019 letter indicating that Plaintiff had difficulty sitting for extended periods of time by imposing a sit/stand option in the RFC. Tr. at p. 20. The ALJ appears, however, to completely discredit a December 2019 letter. *Id.* While the ALJ properly found that Dr. Cardwell's December statement that Plaintiff could not work was an issue properly reserved for the Commissioner, *Becky Sue H. v. Kijakazi*, 2022 WL 304518, at *2 n.5 (N.D.N.Y. Feb. 2, 2022) (statements "that a claimant is 'disabled' or 'unable to work' are not medical opinions."), the ALJ's decision fails to explain his different treatment of the two letters. The explanation he offers, regarding the lack of consistency between the limitations discussed in the December letter, Plaintiff's daily activities, and Dr. Cardwell's treatment records might very well be sufficient. The ALJ, however, did not account for why the limitations in the June letter would have been accepted by the ALJ. For example, the ALJ relies on Plaintiff's ability

to drive from Rhode Island to North Carolina as a basis for discounting the December letter, but accepts the June letter's need for a sit/stand option.  Tr. at p. 20.  The ALJ's unexplained, differing treatment of the letters precludes this Court from meaningfully reviewing his conclusions.  Remand, therefore, is necessary to evaluate Plaintiff's RFC.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**; and it is

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **REMANDED** for further proceedings under section four of section 405; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: June 10, 2022
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge